1    JOSEPH H. HUNT
     Assistant Attorney General
2    BRIGHAM J. BOWEN
     Assistant Branch Director
3    DANIEL D. MAULER
     Virginia State Bar No. 73190
4    Trial Attorney
     United States Department of Justice
5    Civil Division, Federal Programs Branch
     1100 L Street, NW
6    Washington, DC 20001
     Tel: (202) 616-0773
7    Fax: (202) 616-8470
     E-mail: dan.mauler@usdoj.gov
8    *Attorneys for Defendants*

9                  IN THE UNITED STATES DISTRICT COURT

10            FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                      SAN FRANCISCO DIVISION

12

13   **STATE OF CALIFORNIA,**                 Case No. 3:19-cv-6189-WHO

14                          Plaintiff,        **DEFENDANTS' NOTICE OF MOTION
                                              AND MOTION TO DISMISS, OR IN**
15        v.                                  **THE ALTERNATIVE, MOTION FOR
                                              SUMMARY JUDGMENT;**
16                                            **MEMORANDUM OF**
17   **WILLIAM P. BARR, in his official capacity**   **POINTS AND AUTHORITIES**
     **as Attorney General of the United States,** *et*
18   *al.,*                                   Courtroom:   2
                                              Judge:       Honorable William H. Orrick
19                          Defendants.       Hearing Date:     March 25, 2020
                                              Action Filed:     September 30, 2019
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION FOR DISMISSAL, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT.........................................................................1

INTRODUCTION ........................................................................................................1

STATUTORY AND ADMINISTRATIVE BACKGROUND .....................................3

   I.    Employment Eligibility Requirements under 8 U.S.C. § 1324a. ...................3

   II.   The Employment Verification Condition in DOJ Grants..............................3

       a.   The Multi-Year-History of the Employment Verification Condition. .....................3

       b.   The Text of the Condition. .....................................................5

   III.  OJP, OVW, and the Challenged Grant Programs. .......................................7

ARGUMENT ................................................................................................................8

   I.    Because Plaintiff Has Made No Showing that It Intends to Hire a Person Ineligible for Employment, Plaintiff's Challenge to the Employment Verification Condition is Non-Justiciable...........................................8

   II.   Plaintiff Seeks an Improper Advisory Opinion regarding the Interplay of 8 U.S.C. § 1324a and Cal. Labor Code § 1019.2. ...........................................10

   III.  DOJ is Authorized to Require Compliance with the Employment Verification Condition. .........................................................11

       a.   OJP's Additional Authority to Impose the Condition.............................14

       b.   OVW's Additional Authority to Impose the Condition.............................16

   IV.  The Employment Verification Condition Satisfies the Spending Clause. ....16

       a.   The Employment Verification Condition is Germane to the Efficient Administration of DOJ Grants. .....................................................17

       b.   The Condition is Not Unconstitutionally Ambiguous. ..........................18

       c.   The Condition is Not Unconstitutionally Coercive...............................19

   V.   The Employment Verification Condition Does Not Violate the Administrative Procedure Act...........................................................20

CONCLUSION ...........................................................................................................21

i

1

2 **TABLE OF AUTHORITIES**

3 **CASES**

4
5 *Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967) ............................................................................................ 8

6
7 *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*,
   548 U.S. 291 (2006) .......................................................................................... 17

8 *Barbour* v. *Wash. Metro. Area Transit Auth.*,
   374 F. 3d 1161 (D.C. Cir. 2004) ....................................................................... 18
9

10 *Benning v. Georgia*,
   391 F.3d 1299 (11th Cir. 2004) ......................................................................... 19

11 *Bigelow v. Virginia*,
12   421 U.S. 809 (1975) ............................................................................................ 8

13 *Charles v. Verhagen*,
   348 F.3d 601 (7th Cir. 2003) ............................................................................. 19
14

15 *City of Los Angeles v. Barr*,
   929 F.3d 1163 (9th Cir. 2019) ..................................................................... 12, 15
16

17 *City of Los Angeles v. Barr*,
   941 F.3d 931 (9th Cir. 2019) ............................................................................. 15

18 *City of New York v. Shalala*,
19   34 F.3d 1161 (2d Cir. 1994) .............................................................................. 13

20 *Coons v. Lew*,
   762 F.3d 891 (9th Cir. 2014) ............................................................................... 9
21

22 *Haw. Cty. Green Party v. Clinton*,
   14 F. Supp. 2d 1198 (D. Haw. 1998) .................................................................. 8
23

24 *In re Neagle*,
   39 F. 833 (C.C.N.D. Ca. 1889), *aff'd sub nom.*
25   *Cunningham* v. *Neagle*, 135 U.S. 1 (1890) ...................................................... 12

26 *Koslow v. Pennsylvania*,
   302 F.3d 161 (3d Cir. 2002) .............................................................................. 18

27
28 *Mayweathers v. Newland*,
   314 F.3d 1062 (9th Cir. 2002) ........................................................................... 17

ii

*McGee* v. *Mathis,*
   71 U.S. 143 (1866) ................................................................................................. 13

*M'Culloch v. Maryland,*
   17 U.S. 316 (1819) ................................................................................................. 12

*Nat'l Fed'n of Indep. Bus.* v. *Sebelius,*
   567 U.S. 519 (2012) ........................................................................................... 19, 20

*New York v. United States,*
   505 U.S 144 (1992) ................................................................................................ 17

*Or. Bureau of Labor & Indus. ex rel. Richardson v. U.S. W. Commc'ns, Inc.,*
   288 F.3d 414 (9th Cir. 2002) ................................................................................... 8

*Pollution Denim & Co. v. Pollution Clothing Co.,*
   No. CV 07-05208 MMM (WJWx), 2009 WL 10672270 (C.D. Cal. Feb. 9, 2009)................. 8

*Sabri v. United States,*
   541 U.S. 600 (2004) ............................................................................................... 11

*S. Dakota* v. *Dole,*
   483 U.S. 203 (1987) .......................................................................................... *passim*

*Steel Co. v. Citizens for a Better Env't,*
   523 U.S. 83 (1998) .................................................................................................. 8

*Texas v. United States,*
   523 U.S. 296 (1998) ................................................................................................ 9

*United States v. Maurice,*
   26 F. Cas. 1211 (C.C.D. Va. 1823) ........................................................................ 12

*United States v. McDaniel,*
   32 U.S. 1 (1833) ................................................................................................... 12

*United States v. Miami Univ.,*
   294 F.3d 797 (6th Cir. 2002)................................................................................... 17

*United States* v. *N. Pac. Ry. Co.,*
   256 U.S. 51 (1921) ................................................................................................. 13

*Wash. Legal Found. v. Legal Found. of Wash.,*
   271 F.3d 835 (9th Cir. 2001), *aff'd sub nom.*
   *Brown v. Legal Found. of Wash.*, 538 U.S. 216 (2003) ................................................ 9

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990) .................................................................................................. 8


**CONSTITUTIONS**

U.S. Const. art. I, § 8 ................................................................................................... 17

U.S. Const. art. III, § 2 ................................................................................................. 8


**STATUTES**

5 U.S.C. § 301 ............................................................................................................. 15

8 U.S.C. § 1324a ................................................................................................ *passim*

8 U.S.C. § 1373 ............................................................................................................. 7

28 U.S.C. § 509 ........................................................................................................... 15

28 U.S.C. § 510 ........................................................................................................... 15

28 U.S.C. § 530C .................................................................................................. 13, 15

31 U.S.C. § 503 ......................................................................................................... 114

34 U.S.C. § 10101 ....................................................................................................... 15

34 U.S.C. § 10102 ....................................................................................................... 15

34 U.S.C. § 10110 ....................................................................................................... 15

34 U.S.C. § 10152 ......................................................................................................... 6

34 U.S.C. § 10221 .................................................................................................. 14, 15

34 U.S.C. § 10421 ......................................................................................................... 6

34 U.S.C. § 10441 ......................................................................................................... 7

34 U.S.C. § 10442 ....................................................................................................... 16

34 U.S.C. § 10444 ....................................................................................................... 16

34 U.S.C. § 10446 ................................................................................................. 7, 16

34 U.S.C. § 10447 ..................................................................................................... 7

34 U.S.C. § 10448 ................................................................................................. 7, 16

34 U.S.C. § 10449 ..................................................................................................... 7

34 U.S.C. § 10450 ..................................................................................................... 7

34 U.S.C. § 10451 ..................................................................................................... 7

34 U.S.C. § 10561 ..................................................................................................... 6

34 U.S.C. § 10562 ..................................................................................................... 6

34 U.S.C. § 10563 ..................................................................................................... 6

34 U.S.C. § 10564 ..................................................................................................... 6

34 U.S.C. § 10565 ..................................................................................................... 6

34 U.S.C. § 10566 ..................................................................................................... 6

34 U.S.C. § 11131 ..................................................................................................... 6

34 U.S.C. § 12511 ..................................................................................................... 7

34 U.S.C. § 20102 ..................................................................................................... 7

34 U.S.C. § 20103 ................................................................................................. 7, 16

34 U.S.C. § 30305 ..................................................................................................... 7

Cal. Labor Code § 1019.2 ...................................................................................... 2, 10

Pub. L. No. 106-107 ............................................................................................. 13, 14

Pub. L. No. 107-273 ................................................................................................. 16

Pub. L. No. 114-324 ................................................................................................... 7

Pub. L. No. 116-6 ...................................................................................................... 7

**REGULATIONS**

2 C.F.R. § 200.300 ........................................................................................................ 14

2 C.F.R. § 200.210 ........................................................................................................ 14

**OTHER AUTHORITIES**

Attorney General Order No. 1473-91 (Aug. 2, 1991) .................................................... 15

2019 Budget Act General Fund Budget Summary, California State Budget ................................ 20

Defs.' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment

1    **NOTICE OF MOTION AND MOTION FOR DISMISSAL, OR IN THE ALTERNATIVE,**

2    **MOTION FOR SUMMARY JUDGMENT**

3    PLEASE TAKE NOTICE that on March 25, 2020, at 2:00 p.m., or as soon thereafter as

4    counsel may be heard, before The Honorable William H. Orrick, in Courtroom 2, 17th Floor, of

5    the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, Defendants

6    will move, and hereby do move, for dismissal of this action under Rule 12(b)(6), or in the

7    alternative, for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

8    Defendants seek dismissal of or summary judgment on Plaintiff's claims set forth in Counts Six,

9    Seven, Eight, Nine, Ten, and Eleven of the Complaint filed in this matter.

10    **MEMORANDUM OF POINTS AND AUTHORITIES**

11    **INTRODUCTION**

12    For at least the past 17 years, the Department of Justice ("DOJ") has placed a simple

13    requirement on the use of its grant funds: If a grantee chooses to hire an employee with grant

14    money, then the grantee must verify the potential employee's legal eligibility to work in the

15    United States.  This requirement will likely sound familiar because a Federal statute—8 U.S.C.

16    § 1324a—already requires that *any* person or entity who hires an employee must verify that

17    person's eligibility to work in the United States, in addition to other requirements.  DOJ's grant

18    condition (the "Employment Verification Condition" or the "Condition") is included as a

19    condition on grants.  The condition's purpose is to facilitate a funded program's compliance with

20    already-existing legal obligations, ensuring the efficient operation of hiring by the funded

21    programs.

22    In this case, California challenges the inclusion of the Employment Verification Condition

23    in 10 different Federal grant programs.[1]  These grant programs are administered by two different

24

25    [1] Initially, California also challenged conditions attached to the FY 2019 Byrne JAG grant
program and the Title II FY 2019 Title II juvenile justice formula grant program involving 8

26    U.S.C. § 1373.  *See* Compl., Counts One - Five.  After conferral, Defendants agreed to refrain
from enforcing those challenged conditions against California or any jurisdiction located within

27    the state.  Pursuant to the parties' stipulation (*see* ECF No. 32), the Court dismissed Counts One
through Five.  *See* Order, Jan. 21, 2020 (ECF No. 33).  Only Counts Six through Eleven remain at

28    issue.

1

components within DOJ: the Office of Justice Programs ("OJP") and the Office on Violence Against Women ("OVW").  Notably, California has never complained about the Condition before, even though it certified compliance with earlier versions of the condition for the past 17 years.  But more significantly, California's complaint is hypothetical and unripe:  California does *not* assert that it actually intends to use Federal grant money to hire a person ineligible to work in the United States or that it refuses to verify an employee's eligibility in accordance with Section 1324a.  Nor does California challenge the constitutionality of Section 1324a.

Instead, it appears that California wants to use this case as a vehicle to receive an advisory opinion from this Court on a different statute: Cal. Labor Code § 1019.2.  That statute focuses on *reverifications* of employment eligibility.  It does not affect DOJ's Employment Verification Condition, which merely requires a single, *initial* verification of employment eligibility.  As such, Cal. Labor Code § 1019.2 is not implicated.

As shown below, California's challenges to the Employment Verification Condition fail. First, the challenge is unripe and fails to present a genuine case or controversy, depriving this Court of jurisdiction to go any further.  Similarly, California's request for declaratory relief regarding Cal. Labor Code § 1019.2 presents a hypothetical legal claim that will not resolve any concrete disputes between the parties nor affect the real issues in this case.

On the merits, DOJ has sufficient authority to require compliance with the Employment Verification Condition.  Plaintiff's complaint advances an argument that the Federal government must allow states to use money appropriated by Congress to hire ineligible individuals in violation of Federal law.  But it is inconceivable that, when Congress authorized DOJ to issue grants, Congress also intended or expected such grant funds to be used in contradiction of Section 1324a.  Rather, the Department has authority to impose a condition, like the Employment Verification Condition, to ensure that Federal law is followed in the use of grant funds  The statutory authorities applicable to each of the grants at issue confirm this common-sense proposition.  And Plaintiff's remaining challenges fare no better, as the Condition satisfies analysis under the Spending Clause of the Constitution and is reasonable and proper under the Administrative Procedure Act.

2

Defs.' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment

1    In summary, Plaintiff's case is hypothetical and unripe, and its arguments on the merits do

2  not survive scrutiny.  Plaintiff's Complaint should be dismissed, or, in the alternative, Defendants

3  should be granted summary judgment.

4              **STATUTORY AND ADMINISTRATIVE BACKGROUND**

5  **I.    Employment Eligibility Requirements under 8 U.S.C. § 1324a.**

6    Whenever any person or entity chooses to hire another person for employment, the potential

7  employer is statutorily required to verify that the employee is legally eligible to work in the

8  United States.  *See generally* 8 U.S.C. § 1324a.  That statute makes it unlawful for any person or

9  entity to "hire . . . for employment in the United States an alien knowing the alien is an

10  unauthorized alien."  8 U.S.C. § 1324a(a)(1)(A).  The same statute then requires that any person

11  or entity that hires shall verify the employee's eligibility to work in the United States.  *See*

12  8 U.S.C. § 1324a(b).  The employer generally records verifying information from U.S. passport,

13  resident alien card, social security account number card, a state driver's license, or other similar

14  documents onto a Form I-9, issued by the U.S. Department of Homeland Security.  *See* 8 U.S.C.

15  § 1324a(b)(1); I-9, Employment Eligibility Verification, https://www.uscis.gov/i-9 (last visited

16  Jan. 21, 2020).  Once employment eligibility is verified, the employer is statutorily required to

17  keep and maintain certain documentation for certain periods of time.  *See* 8 U.S.C. § 1324a(b)(3).

18  These statutory obligations apply to all persons and entities in the United States, including the

19  State of California, independent of the grant conditions challenged in this case.

20  **II.    The Employment Verification Condition in DOJ Grants.**

21      **a.    The Multi-Year-History of the Employment Verification Condition.**

22    For at least the past 17 years, the majority of DOJ grant programs have contained a core

23  requirement that grantees who choose to hire employees verify employment eligibility, maintain

24  documentation of that eligibility, and monitor subrecipients' compliance with this condition.

25  Prior to FY 2019, this requirement was set forth in the Department of Justice's Financial Guide.

26  The Financial Guide articulates generally-applicable requirements of a financial nature that apply

27  to multiple grants.  Compliance with the Financial Guide was required as a Special Condition of

28

3

grants as least as early as 2003.  *See, e.g.*, Admin. Rec.[2] at 005021, ¶ 1 (FY 2003 STOP Award to California that required the recipient to comply with the "financial and administrative requirements set forth in the current edition of the Office of Justice Programs (OJP) Financial Guide.").  Thus, compliance with these previous versions of the Employment Verification Condition was incorporated by reference into grants.  And, since 2003, compliance with the Condition was required each year for all of the grants issued by OJP, and for most of the grants issued by OVW.[3]  In FY 2019, this core requirement to verify employment eligibility was restated in the express text of multiple grants (but it also remains in the current Financial Guide).  *See, e.g.*, AR 000005-6, ¶ 9 (FY 2019 sample Byrne JAG award document containing the Employment Verification Condition); AR 00078-79, ¶ 9 (same for FY 2019 PREA award); AR 06191, ¶ 5 (same for FY 2019 SASP award to California); AR 06210, ¶ 5 (same for FY 2019 STOP award to California); AR 00992 (same condition in the current DOJ Financial Guide).  But that re-iteration does not change the fact that such a requirement has been a long-running condition of most grants issued by the Department of Justice.

For example, in 2003, grantees agreed to "complete and keep on file, as appropriate, the Immigration and Naturalization Service Employment Eligibility Verification form (I-9).  This form is to be used by recipients of Federal funds to verify that persons are eligible to work in the United States."  Admin. Rec. at 04818 (2003 Financial Guide).  This same substantive requirement appears in *every* version of the Financial Guide issued by OJP or the Department from 2003 until today.  *See* Admin Record at 01122 (2005 OJP Financial Guide); AR 01363 (2006 OJP Financial Guide); AR 00611 (2009 OJP Financial Guide); AR 01515 (OJP 2011 Financial Guide); AR 01642 (OJP 2014 Financial Guide); AR 00777 (DOJ 2015 Financial Guide); AR 00992 (Current DOJ Financial Guide).  And as mentioned above, a version of the

---

[2] The Administrative Record was filed on January 15, 2020 in this matter.  *See* ECF No. 31.  For clarity, the Administrative Record contains a Bates prefix of "Cal. v. Barr AR" and is positioned in the bottom-center margin of each page.

[3] For three years, during 2012-2014, OVW used its own OVW Financial Guide, which did not contain the I-9 language.  Prior to that time, OVW required grantees, by special condition, to follow the OJP Financial Guide.  Starting in 2015, DOJ issued a Financial Guide that has been jointly used by OJP, OVW, plus other components of DOJ, and which continues to this date to include an employment eligibility verification requirement.

1    condition was incorporated by reference into the grants administered by OJP and OVW.  *See*,

2    *e.g.*, Admin. Rec. at 01774, ¶ 1 (FY 2005 sample OJP award package that requires compliance

3    with the "financial and administrative requirements set forth in the current edition of the Office of

4    Justice Programs (OJP) Financial Guide."); AR 01785, ¶ 1 (same for FY 2007); AR 01796 (same

5    for FY 2010); AR 01820 ¶ 1 (same for FY 2014); AR 04182, ¶ 2 (same for FY 2016); AR 01834,

6    ¶ 3 (same for FY 2017); AR 005255, ¶ 1 (OVW FY 2015 SASP award to California requiring

7    compliance with the DOJ Financial Guide); AR 005263, ¶ 1 (same for FY 2015 STOP ward to

8    California); AR 05348, ¶ 1 (same for FY 2016 SASP award to California); AR 05358, ¶ 1 (same

9    for FY 2016 STOP award to California); AR 05495, ¶ 2 (same for FY 2017 SASP award to

10   California); AR 05514, ¶ 2 (same for FY 2017 STOP award to California); AR 05767, ¶ 2 (same

11   for FY 2018 SASP award to California); AR 05787, ¶ 2 (same for FY 2018 STOP award to

12   California).

13             **b.  The Text of the Condition.**

14         Today, the text of the applicable Employment Verification Condition contains the same

15   core requirement as 17 years ago, but it has been updated and clearly indicates that it applies only

16   to the use of Federal grant funds to hire employees.  The current text has been made uniform

17   across all challenged grants, and an example of the uniform text (from FY 19 Byrne JAG Award

18   to California) is at Admin. Rec. 00005-6, ¶ 9.[4]

19         The Condition requires that a grantee must, "as part of the hiring process for any position

20   within the United States that is or will be funded (in whole or in part) with award funds . . .[,]

21   properly verif[y] the employment eligibility of the individual who is being hired, consistent with

22   the provisions of 8 U.S.C. 1324a(a)(1) and (2)" and "maintain records of all employment

23   eligibility verifications pertinent to compliance with this award condition in accordance with

24   Form I-9 record retention requirements."  Admin. Rec. at 00005, ¶ 9(1(A), (D).  The Condition

25   allows a grantee the option of choosing to use the E-Verify program to verify employment

26   ───────────────

27         [4] The Employment Verification Condition text used by OVW is essentially the same
     language but OVW award documents are generally shorter and incorporate by reference a version
     of the condition text that is posted on OVW's website.  *See* Admin. Rec. at 06191, ¶ 5 (FY 2019
28   SASP award to California); AR 06210, ¶ 5 (FY 2019 STOP award to California).

eligibility electronically, which would take the place of the traditional I-9 documentation procedure. *See id.* at AR 00005, ¶ 9(4)(B). The Condition requires a grantee to notify persons involved in the hiring process that employment verification is necessary and of the existence of the relevant federal statutes, *see id.* at AR 00005, ¶ 9(1)(B)(1-2) and (4)(A), to monitor sub-recipients' compliance with this requirement, *see id.* at AR 00005, ¶ 9(2), and to provide training to those involved in the hiring process. *See id.* at AR 00005, ¶ 9(1)(C).

The Condition expressly allows a grantee to use grant funds to pay for any reasonable and necessary costs that arise from compliance. *See id.* at AR 00005, ¶ 9(3). And the Condition includes an important reminder about a grantee's non-discrimination obligations under Federal law: "Nothing in this condition shall be understood to authorize or require any recipient, any subrecipient at any tier, or any person or other entity, to violate any federal law, including any applicable civil rights or nondiscrimination law." *Id.* at AR 00005-6, ¶ 9(4)(D).

It is also important to understand what the Employment Verification Condition does not do. The Condition is a "use of funds" condition, meaning that it applies only to hiring done with grant funds. *See id.* at AR 00005, ¶ 9(1)(A) (applying to the "hiring process" that will be "funded (in whole or in part) with award funds"). This Condition does *not* apply to hiring done by Plaintiff using non-award funds. Thus, the vast majority of hiring by Plaintiff is unaffected by this Condition.[5] As a "use of funds" condition, the Employment Verification Condition is similar to numerous other longstanding conditions governing the use of funds that have never been challenged, presumably because their validity is beyond question. *See, e.g.*, Compl., Ex. B, (FY 2019 Byrne JAG Award Special Conditions) ¶ 24 (OJP grant funds cannot be used for lobbying); ¶ 48 (any information technology system funded by OJP grant funds must comply with Criminal Intelligence Systems Operating Policies); ¶ 60 (body armor purchased with OJP grant funds must carry a "mandatory wear" policy); ¶ 66 (results of DNA testing funded by OJP grants must be uploaded to the Combined DNA Index System).

---

[5] Plaintiff must still comply, of course, with 8 U.S.C. § 1324a as a stand-alone statute.

1       **III.    OJP, OVW, and the Challenged Grant Programs.**

2            Plaintiff challenges ten different grant programs administered by components of DOJ,

3       specifically OJP and OVW.  As will be described further below, OJP and OVW both utilize a

4       common set of authorities that justify the Employment Verification Condition, in addition to

5       separate authorities specific to each component.

6            The challenged programs administered by OJP, and the statutory authorization for DOJ to

7       issue and administer grants under those programs, are as follows:

8            • Edward Byrne Memorial Justice Assistance Grant ("Byrne JAG")

9                 o *See* 34 U.S.C. § 10152(a)(1).

10           • Title II Juvenile Justice Grant

11                o *See* 34 U.S.C. § 11131(a).

12           • Residential Substance Abuse Treatment Grant

13                o *See* 34 U.S.C. § 10421(a).

14           • Paul Coverdell Forensic Science Improvement Grants

15                o *See* 34 U.S.C. §§ 10561-10566 for authorization for formula grant awards.

16                     *See also* 34 U.S.C. § 10563(a)(2) for authorization for discretionary,

17                     competitive grant awards.

18           • DNA Capacity Enhancement and Backlog Reduction Grant

19                o *See* Pub. L. No. 116-6, 133 Stat. 13, 113; Pub. L. No. 114-324, section 3(a).

20           • Prison Rape Elimination Act Funds ("PREA grant")

21                o *See* 34 U.S.C. § 30305.

22           • Victims of Crime Act Assistance Grants ("VOCA Assistance")

23                o *See* 34 U.S.C. 20103(a-b).

24           • Victims of Crime Act Compensation Grants ("VOCA Compensation")

25                o *See* 34 U.S.C. 20102(a)(1).

26           Similarly, the challenged grant programs administered by OVW and their statutory

27       authorizations are as follows:

28           • Sexual Assault Services Formula Grant Program (the "SASP" program)

7

Defs.' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment

1          o   *See* 34 U.S.C. § 12511(b).

2          • STOP Violence Against Women Formula Grant Program (the "STOP" program)

3          o   *See* 34 U.S.C. §§ 10441, 10446-10451.

4                                      **ARGUMENT**

5    **I.      Because Plaintiff Has Made No Showing that It Intends to Hire a Person
             Ineligible for Employment, Plaintiff's Challenge to the Employment
6            Verification Condition is Non-Justiciable.**

7          Under Article III of the Constitution, the jurisdiction of the Federal courts extends only to

8    "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1.  Matters outside this rubric are "non-

9    justiciable."  *Or. Bureau of Labor & Indus. ex rel. Richardson v. U.S. W. Commc'ns, Inc.*, 288 F.3d

10   414, 416 (9th Cir. 2002).  Two principles of justiciability are involved here:  standing and ripeness.

11   "While standing is concerned with *who* is a proper party to litigate a particular matter, the doctrines

12   of mootness and ripeness determine *when* that litigation may occur."  *Haw. Cty. Green Party v.*

13   *Clinton*, 14 F. Supp. 2d 1198, 1201 (D. Haw. 1998).

14         To satisfy the "irreducible constitutional minimum" of standing, a plaintiff must demon-

15   strate an "injury in fact[,]" a "fairly traceable" causal connection between the injury and defendant's

16   conduct, and redressability.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-03 (1998)

17   (cleaned up).  The injury needed for constitutional standing must be "concrete[,]" "objective," and

18   "palpable[,]" not merely "abstract" or "subjective."  *See Whitmore v. Arkansas*, 495 U.S. 149, 155,

19   178 (1990); *Bigelow v. Virginia*, 421 U.S. 809, 816-17, 830 (1975).  Additionally, the injury must

20   be "certainly impending" rather than "speculative[.]"  *Whitmore*, 495 U.S. at 157, 158.  In short, for

21   Plaintiff to have standing, "an actual, live controversy must exist between parties with adverse legal

22   interests."  *Pollution Denim & Co. v. Pollution Clothing Co.*, No. CV 07-05208 MMM (WJWx),

23   2009 WL 10672270, at *8 (C.D. Cal. Feb. 9, 2009).

24         Constitutional justiciability also requires that a dispute be ripe for judicial consideration.  In

25   a challenge to governmental action, that means the challenged action must have been "formalized

26   and its effects felt in a concrete way by the challenging parties."  *Abbott Labs. v. Gardner*, 387 U.S.

27

28

                                             8

136, 148-49 (1967).  In other words, "[a] claim is not ripe for adjudication if it rests upon 'contin-gent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted).  Like the rules of standing described above, these considerations are part of whether the case presents a concrete controversy under Article III.  *See Wash. Legal Found. v. Legal Found. of Wash.*, 271 F.3d 835, 850 (9th Cir. 2001) (en banc) ("The ripeness doctrine is derived from Article III's case or controversy requirement.  It prevents the courts from entangling themselves in abstract disagreements over administrative policies, and also protects the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by challenging parties.") (cleaned up), *aff'd sub nom. Brown v. Legal Found. of Wash.*, 538 U.S. 216 (2003).[6]

Applying these standards here, Plaintiff cannot show the "injury in fact" needed for constitutional standing, and its claims are not constitutionally ripe for judicial review.  At no point in the Complaint does Plaintiff allege that it intends to hire an undocumented alien or any other person not eligible to work in the United States with the funds it receives under any of the grant programs at issue in this case.  Nor does Plaintiff point to a particular subrecipient of its grants that intends to hire ineligible persons with the grant funds.  There is nothing in the Complaint that remotely suggests that Plaintiff or its subrecipients will do anything other than hire only persons who are legally eligible to work in the United States.  Nor has Plaintiff alleged that it or its subrecipients would refuse to follow the employment verification provisions of 8 U.S.C. § 1324a(b) in the course of hiring employees funded by the grants absent the grant conditions.  Plaintiff has thus pled no injury from the application of the Employment Verification Condition, as Plaintiff would apparently engage in precisely the same conduct even in the absence of the conditions.

For there to be a real "case or controversy" here, Plaintiff must answer the following question:  Does California intend to hire ineligible employees using Federal grant funds, or to refuse to follow the employment verification provisions of Section 1324a(b) in engaging in hiring

---

[6] These considerations do not involve merely "prudential ripeness," which asks, in contrast, about the "fitness" of the issues presented for judicial review and whether withholding review would subject the parties to "hardship."  *See Coons v. Lew*, 762 F.3d 891, 900 (9th Cir. 2014).

1  under the grants?  If the answer is "Yes," then a live case may exist.  But if the answer is "No," then

2  California is stipulating to actions that will meet and satisfy the core of the Employment

3  Verification Condition.  In that situation, any remaining dispute between the parties is merely

4  hypothetical, rendering this Court without jurisdiction in this case.  Counts Six through Eleven of

5  the Complaint can and should be dismissed on that ground alone.

6  **II.    Plaintiff Seeks an Improper Advisory Opinion regarding the Interplay of 8**
       **U.S.C. § 1324a and Cal. Labor Code § 1019.2.**

7

8          In Count Eleven of the Complaint, Plaintiff seeks a declaratory judgment from this Court

9  regarding the interplay of 8 U.S.C. § 1324a and Cal. Labor Code § 1019.2.  But that interplay is

10  not a real controversy in this case.  Defendants do not seek to enforce Section 1324a as a statute

11  in this case.  Rather, Defendants merely seek to defend and enforce a grant condition.  It is

12  certainly true that the Employment Verification Requirement refers to Section 1324a, but it does

13  so as a reference to illustrate the meaning of the condition itself.  This Court need not analyze

14  Section 1324a as a free-standing statute to resolve this case.  As such, Count Eleven merely seeks

15  an improper advisory opinion.

16          Second, the real goal of Cal. Labor Code § 1019.2 focuses on *reverification* of an

17  employee's eligibility, not the initial verification at beginning of employment.  *See* Compl., ¶ 255

18  ("Labor Code § 1019.2 does not in any way restrict employers from verifying an employee's

19  eligibility to be employed in the United States . . . . Labor Code § 1019.2 only prohibits

20  employers from reverifying an employee's eligibility to be employed in the United States when

21  they are not required to do so under federal law.").  But that does not have anything to do with the

22  Employment Verification Condition.  The condition is *silent* about reverification of employment

23  status.  Instead, the condition is concerned with the *initial* verification of employment status.

24  Once a grantee does the *initial* verification of an employee's status, the condition does not require

25  further reverification.  Because of this, Cal. Labor Code § 1019.2 is not affected by the

26  Employment Verification Condition.

27

28

10

Defs.' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment

### III.    DOJ is Authorized to Require Compliance with the Employment Verification Condition.

In Count Six of the Complaint, Plaintiff alleges that the Employment Verification Condition violates the constitutional separation of powers because DOJ is without authority to impose it on the grant programs it administers. *See* Compl., ¶¶ 230-31.  Similarly, in Count Seven, Plaintiff alleges that Defendants have acted *ultra vires* in imposing the condition and without statutory authority. *See id.* at ¶ 233.  As will be shown below, DOJ has sufficient authority to require compliance with the condition.

Federal law already requires a grantee (and every other party, including the State of California) to conduct employment verification checks and to refrain from hiring individuals without work authorization. *See* 8 U.S.C. § 1324a.  Plaintiff does not challenge this existing requirement.  Given this reality, DOJ has the authority to condition the use of Federal grant funds to ensure that Section 1324a is not violated.  In other words, Congress did not intend for its grant funds to be used to violate its own statutes.  As such, DOJ has the authority to apply reasonable conditions to grants to effectuate the will of Congress expressed in Section 1324a.  Thus, the Employment Verification Condition is a valid exercise of authority delegated by Congress.

Where Congress delegates broad authority to executive agencies to oversee and manage the expending of appropriated funds through various instruments, including grants, cooperative agreements, and contracts, the executive agency charged with expending such funds has no less an interest than does Congress in ensuring that the appropriated funds are spent for the "general welfare," for the purpose for which they were appropriated, and not on "operations thwarted by local and state improbity." *Sabri v. United States*, 541 U.S. 600, 605 (2004).  To protect against waste, fraud, abuse, or misuse of appropriated Federal dollars, executive agencies must exercise authority logically similar to Congress' "corresponding authority under the Necessary and Proper Clause to see to it that taxpayer dollars appropriated under that power are in fact spent for the general welfare, and not frittered away." *Id*.  The terms and conditions applied by an executive agency to the awards are subject to the same judicially enforceable limits under *S. Dakota v. Dole*, 483 U.S. 203 (1987), as those terms and conditions applied by Congress.  That is, terms and

11

1    conditions to an award imposed by an executive agency are not subject to a different legal or

2    constitutional analysis from the one articulated in *Dole*. *See City of Los Angeles v. Barr*, 929 F.3d

3    1163, 1175 n. 6 (9th Cir. 2019) (analyzing DOJ grant conditions under the principles of *Dole* after

4    noting that, when Congress delegated the task to DOJ of specifying grant conditions, there is "no

5    reason why the addition of an agency middleman either expands or contracts Congress's power to

6    'provide for the . . . general Welfare.'").

7         By statute, as it has done since the earliest days of the Republic, Congress routinely

8    delegates the authority for particular regulations and expenditures to be carried out by the

9    executive. *See, e.g.*, *United States v. McDaniel*, 32 U.S. 1, 14-15 (1833) (noting that "the head of

10   a department, in the distribution of its duties and responsibilities, is often compelled to exercise

11   his discretion. He is limited in the exercise of his powers by the law; but it does not follow, that

12   he must show statutory provision for everything he does.  No government could be administered

13   on such principles.").  Similarly, a Federal district court explained in 1899 that "[t]he statutes of

14   Congress, in their express provisions, do not present all the law of the United States.  Their

15   incidents and implications are as much a part of the law as their express provisions.  When they

16   prescribe duties, provide for the accomplishment of certain designated objects, or confer authority

17   in general terms, they carry with them all the powers essential to effect the ends designed." *In re*

18   *Neagle*, 39 F. 833, 853 (C.C.N.D. Ca. 1889), *aff'd sub nom. Cunningham* v. *Neagle*, 135 U.S. 1

19   (1890).  *See also United States v. Maurice*, 26 F. Cas. 1211, 1216 (C.C.D. Va. 1823) (noting that

20   the executive branch could discharge its duties by contract, even though the power to do so was

21   not expressly conferred by any statute).  *Maurice* very closely tracks the reasoning in *M'Culloch*

22   *v. Maryland*, 17 U.S. 316 (1819), which held that a body charged with execution of the law may

23   elect reasonable means to discharge its duties, provided only that no law prohibit a given means

24   (in which case "those who contend that it may not select any appropriate means, that one

25   particular mode of effecting the object is excepted, take upon themselves the burden of

26   establishing that exception.") *M'Culloch*, 17 U.S. at 410.

27

28

12

Defs.' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment

This principle of American law survives to the present day, as seen in a recent Second Circuit decision that focused on the authority of the Department of Health and Human Services to administer the Head Start program.  There, the court recognized that,

> the statutes that provide for HHS to appropriate and administer funds for the Head Start program . . . do not address the specific question of whether HHS may disallow a grantee's accumulated accounts receivable and payable on the basis of their age and lack of supporting documentation.  Rather, the statutes invest the Secretary with the broad authority to audit and examine the records of any agency receiving financial assistance under the Head Start program and to prescribe rules or regulations necessary for the execution of the program, including rules regarding recipients' record-keeping.  Because of HHS's broad discretion in this area, and the fact that Congress did not speak to the issues under review, the City's argument that HHS has acted in excess of its statutory authority is without merit.

*City of New York v. Shalala*, 34 F.3d 1161, 1166-67 (2d Cir. 1994) (internal citations omitted).

Accordingly, as long as there is no statute prohibiting DOJ from using a grant condition to ensure Federal funds are not used to violate existing Federal law, the foregoing principles indicate that DOJ generally possesses authority to do so, particularly as it has long been settled that a "grant by the United States . . . constitute[s] a contract."  *McGee* v. *Mathis*, 71 U.S. 143, 155 (1866); *see also*, *e.g.*, *United States* v. *N. Pac. Ry. Co.*, 256 U.S. 51, 63-64 (1921).

Reflecting this authority described above, Congress vested the Department of Justice with express authority (absent a contrary statute) to carry out its "activities[,] in [its] reasonable discretion[,] through any means, including – . . . through . . . grants or cooperative agreements with non-Federal parties."  28 U.S.C. § 530C(a)(4).  And from the Congressional authority to make grants, it follows that DOJ may carry out its grant-making activities through the placement of reasonable conditions on those grants to ensure the funds are not used in violation of other Federal statutes.

Additionally, the Federal Financial Assistance Management Improvement Act of 1999, Pub. L. No. 106-107, 113 Stat. 1486, and its resulting regulations, established a regulatory structure to encourage uniform rules across Federal grants that support national policy objectives.  That 1999 Act, whose purposes include "improv[ing] the effectiveness and performance of Federal financial assistance programs; . . . improv[ing] the delivery of services to the public; . . . and . . . facilitat[ing] greater coordination among those responsible for delivering such services,"

13

Defs.' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment

1    expressly authorized OMB to "direct, coordinate, and assist Federal agencies" in establishing "a

2    Government wide uniform rule for any generally applicable requirement *established to achieve*

3    *national policy objectives* that applies to multiple Federal financial assistance programs across

4    Federal agencies." 113 Stat. 1486 (emphasis added). Pursuant to this Act, OMB issued the

5    *Uniform Administrative Requirements, Cost Principles, and Audit Requirements* on December 26,

6    2013, in 2 C.F.R. part 200. *See also* 31 U.S.C. § 503(c)(1)(A). These regulations were then

7    adopted and supplemented, pursuant to statutory authority, by the Department of Justice on

8    December 19, 2014, in 2 C.F.R. part 2800. The regulations require OJP and OVW to "manage

9    and administer [each grant award they make] in a manner so as to ensure that Federal funding is

10   expended and associated programs are implemented in full accordance with" "national policy

11   requirements[.]" 2 C.F.R.§ 200.300(a). These "[n]ational policy requirements . . . include

12   statutory, executive order, other Presidential directive, or regulatory requirements that apply by

13   specific reference and are not program-specific[.]" 2 C.F.R. § 200.210(b)(1)(ii).

14        Congress established a "national policy" in 8 U.S.C. § 1324a by requiring all employers to

15   verify the legal eligibility of potential employees to work in the United States. The Employment

16   Verification Condition not only improves the efficient operation of grant programs but also aids

17   the pursuit of Congress' enacted national policy, fulfilling the obligation that DOJ

18   "communicate" relevant public policy requirements to grant recipients either directly or by

19   reference in the terms and conditions of the grant award. *See* 2 C.F.R. § 200.300(a). Thus, the

20   Condition fits comfortably within this regulatory structure.

21        **a. OJP's Additional Authority to Impose the Condition.**

22        To accomplish its mission, OJP has additional, specific authority to attach reasonable

23   conditions to the grants that it administers. OJP is authorized to "establish such rules, regulations,

24   and procedures as are necessary to the exercise of [its] functions, and as are consistent with" the

25   purposes of OJP's authorizing statutes. 34 U.S.C. § 10221(a). Further, OJP is required to

26   "establish such rules and regulations as are necessary to assure the continuing evaluation of . . .

27   programs or projects . . . in order to determine – whether such programs or projects have achieved

28   the performance goals stated in the original application; . . . their cost in relation to their

14

effectiveness in achieving stated goals; their impact on communities and participants; and their implication for related programs."  34 U.S.C. § 10221(b).  In establishing such rules and procedures, OJP's authorizing statute requires that it "prevent needless duplication and unnecessary delays in . . . expenditure of funds at all levels of government."  34 U.S.C. § 10221(c).

Furthermore, Attorney General Order No. 1473-91, ¶ 2 (Aug. 2, 1991)—issued pursuant to 28 U.S.C. §§ 509 and 510, and 5 U.S.C. § 301—delegates to the Assistant Attorney General (AAG) overseeing OJP the authority to "establish policies and priorities for [OJP] with respect to the award and administration of grants," to "ensure that those grants . . . entered into by [OJP] are designed to accomplish the statutory purposes of [OJP] and conform to the policies and priorities of the Department of Justice," to "make final determinations concerning whether such grants . . . are consistent with the established policies and priorities," and, "if they are "not consistent with such policies and priorities," to "direct compliance with the established policies and priorities."

In addition, OJP's imposition of the Employment Verification Condition is authorized by 34 U.S.C. § 10102(a)(6).[7]  The Attorney General has "final authority over all functions, including any grants" made by DOJ.  34 U.S.C. § 10110(2); *see also* 28 U.S.C. § 509.  Under the Attorney General's authority, an AAG heads OJP.  *See* 34 U.S.C. § 10101; 28 U.S.C. § 530C(a)(4).  In particular, the AAG may "exercise such other powers and functions as may be vested in [him] pursuant to [Chapter 101 of Title 34] or by delegation of the Attorney General, including placing special conditions on all grants, and determining priority purposes for formula grants."  34 U.S.C. § 10102(a)(6).  The Employment Verification Condition fits easily into this delegation of authority as a "special condition[]" and a "priority purpose[]."

Similarly, the VOCA Assistance grant program statutorily authorizes the Director of the Office for Victims of Crime (a component of OJP) to require grantees to "provide such other

---

[7] Defendants recognize that the Ninth Circuit recently held that the powers provided to DOJ by Section 10102(a)(6) involved the "power to impose tailored requirements when necessary."  *City of Los Angeles v. Barr*, 941 F.3d 931, 941 (9th Cir. 2019).  That decision, however, focused on the "Notice" and "Access" conditions that did not enjoy the specific statutory support of Section 1324a, which is different from the present case.  *See id.* at 936-37.  Moreover, the Employment Verification Condition is narrowly tailored to effectively apply only to grantees who choose to hire with Federal funds.

15

information and assurances related to the purposes of this section as the Director may reasonably require."  34 U.S.C. § 20103(a)(2)(D).  Requiring employment verification and maintenance of appropriate records, as required under Section 1342a, falls within such "assurances" that grant money is used in accordance with Federal law.

### b. OVW's Additional Authority to Impose the Condition.

Similar to OJP, OVW also has specific additional authority to accomplish its mission.  The Violence Against Women Office Act, tit. iv of Pub. L. No. 107-273, 116 Stat. 1789-1791 (2002), established OVW as a "separate and distinct office" within the Department of Justice under "the general authority of the Attorney General."  34 U.S.C. § 10442(a) and (b).  The OVW Director has "final authority over all grants, cooperative agreements, and contracts awarded by [OVW]."  *Id*. at § 10442(b).  The Director's duties include "development and management of grant programs" under the Violence Against Women Act and subsequent legislation and "the award and termination of grants, cooperative agreements, and contracts."  *Id.* at § 10444(5).  This broad authority also provides the OVW Director with authority to "[establish] such rules, regulations, guidelines, and procedures as are necessary to carry out any function of the Office."  *Id.* at § 10444(8).  This authority permits OVW to impose reasonable conditions on its grants, including the Employment Verification Condition.

Further, the STOP Program has additional, statutory authority that permits the Attorney General to apply reasonable conditions to STOP grants.  Under the STOP statutory structure, Congress required the Attorney General to issue regulations or guidelines implementing the program.  34 U.S.C. § 10448(c).  The STOP Program statute authorizes the Attorney General to impose "reasonable conditions" on STOP awards "to ensure that the States meet statutory, regulatory, and other program requirements."  *Id*. at § 10446(e)(3).  This authority permits the imposition of the Employment Verification Condition to the STOP Program.

### IV.  The Employment Verification Condition Satisfies the Spending Clause.

In Count Eight, the Plaintiff alleges that the Employment Verification Condition violates the Spending Clause of the U.S. Constitution, which provides that the "Congress shall have Power . . . to pay the Debts and provide for the common Defence and general Welfare of the

16

Defs.' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment

1   United States."  U.S. CONST. art. I, § 8, cl. 1.  It is well established that the Spending Clause

2   authority is "broad," and empowers Congress to "set the terms on which it disburses federal

3   money to the States[.]"  *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296

4   (2006); *see also*, *e.g.*, *S. Dakota v. Dole*, 483 U.S. at 206 (noting that Congress has "repeatedly

5   employed the [spending] power to further broad policy objectives by conditioning receipt of

6   federal moneys upon compliance by the recipient with federal statutory and administrative

7   directives." (citations omitted)); *United States v. Miami Univ.*, 294 F.3d 797, 808 (6th Cir. 2002)

8   ("Spending clause legislation, when knowingly accepted by a fund recipient, imposes

9   enforceable, affirmative obligations" on the recipient).

10      Plaintiff specifically argues that the Employment Verification Condition is not germane to

11   the goals of the Federal grant programs, *see* Compl., ¶ 237, is unconstitutionally ambiguous, *see*

12   *id.* at ¶ 238, and is "so coercive as to pass the point at which pressure turns into compulsion," *id.*

13   at ¶ 239 (cleaned up).  None of these arguments has merit.

### a.  The Employment Verification Condition is Germane to the Efficient Administration of DOJ Grants.

16      Plaintiff argues that the Employment Verification Condition is not germane to the particular

17   goals of each challenged grant program.  *See* Compl., ¶ 237.  Plaintiff is mistaken on this point

18   because it misunderstands the goal of the Employment Verification Condition.

19      As an initial matter, any germaneness inquiry required by the Spending Clause does not

20   pose a difficult hurdle.  To the contrary, the Ninth Circuit has emphasized that this is a "low-

21   threshold" inquiry that "is a far cry from . . . an exacting standard for relatedness."  *Mayweathers*

22   *v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002); *see id.* (stating that conditions on federal grants

23   "*might* be illegitimate if the conditions share no relationship to the federal interest in particular

24   national projects or programs") (citation omitted).  Thus, in *Dole*, the Supreme Court upheld

25   conditioning the receipt of federal highway funds on the loosely related requirement that a State

26   adopt a minimum drinking age.  *See* 483 U.S. at 208-09; *see also New York v. United States*, 505

27   U.S. 144, 167 (1992) (stating that only "some relationship" is necessary between spending

28   conditions and "the purpose of the federal spending."); *Koslow v. Pennsylvania*, 302 F.3d 161,

17

Defs.' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment

1   175 (3d Cir. 2002) (explaining that there need only be a "discernable relationship" between a

2   condition imposed pursuant to the Spending Clause and the "federal interest in a program it

3   funds").  As the D.C. Circuit has observed, the Supreme Court has never "overturned Spending

4   Clause legislation on relatedness grounds."  *Barbour v. Wash. Metro. Area Transit Auth.*, 374

5   F.3d 1161, 1168 (D.C. Cir. 2004).

6        The Employment Verification Condition is sufficiently germane to the goals of Federal

7   grant programs to satisfy scrutiny under the Spending Clause because it aids in the efficient

8   administration and performance of the funded programs in compliance with Federal law.  The

9   Employment Verification Condition assists the efficient administration of grantees in requiring

10   attention to a pre-existing legal obligation.  Any grantee that seeks to hire an employee faces legal

11   obligations under 8 U.S.C. § 1324a to verify an employee's legal status to work in the United

12   States.  This legal obligation is universal for all grantees regardless of the particular goals of the

13   grant program.  The Employment Verification Condition facilitates a grantee to make appropriate

14   plans to comply with this universal legal obligation, such as training appropriate personnel and

15   planning for the preservation of necessary documents, when expending Federal grant dollars to

16   hire personnel.  DOJ grant administrators can then collaborate with grantees to ensure that

17   employment eligibility is verified.  This leads to a smoothly running program funded with Federal

18   grant dollars.

19                    **b. The Condition is Not Unconstitutionally Ambiguous.**

20        Plaintiff next argues that the Employment Verification Condition is supposedly too

21   ambiguous to survive scrutiny under the Spending Clause.  *See* Compl., ¶ 238.  This argument

22   should be quickly rejected.

23        The condition requires grantees who use Federal grant dollars to hire to conduct the

24   employment verification process already required under Federal law.  Plaintiff does not suggest

25   that its statutory duties—with which it already presumably complies and does not contest in this

26   action—are unclear.  Plaintiff can thus hardly complain that a condition that parrots those

27   statutory duties is ambiguous, much less so unclear as to prevent Plaintiff from making a decision

28

18

Defs.' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment

1  about whether or not to accept a particular grant "knowingly, cognizant of the consequences of

2  [its] participation" in the grant program.  *Dole*, 483 U.S. at 206-07 (citation omitted).

3      Further, even if there were any uncertainty at the margins of the condition, such a

4  penumbra would not render it unconstitutionally ambiguous.  Indeed, "the exact nature of [grant]

5  conditions may be largely indeterminate, provided that the existence of the conditions is clear,

6  such that States have notice that compliance with the conditions is required."  *Charles v.*

7  *Verhagen*, 348 F.3d 601, 607 (7th Cir. 2003) (citation omitted); *see*, *e.g.*, *Benning v. Georgia*, 391

8  F.3d 1299, 1306 (11th Cir. 2004) ("Once Congress clearly signals its intent to attach federal

9  conditions to Spending Clause legislation, it need not specifically identify and proscribe in

10 advance every conceivable state action that would be improper.") (citation omitted).

11          **c.  The Condition is Not Unconstitutionally Coercive.**

12     As the final argument under Count Eight, Plaintiff alleges that the Employment

13 Verification Condition is unconstitutionally coercive.  *See* Compl., ¶ 239.  That argument is

14 without merit.

15     First, the Employment Verification Condition only seeks to ensure that grantees who

16 expend Federal funds to hire employees do something that they are already required to do under

17 Federal law.  It is difficult to comprehend how a grant condition that addresses requirements that

18 already apply to Plaintiff would be unconstitutionally coercive under the Spending Clause.

19     Second, the amount of money at stake in this case does not come close to being overly

20 coercive in the constitutional sense.  In *Dole*, the Supreme Court rejected the same coercion

21 argument leveled at a spending program that would have withheld funds that "constituted less

22 than half of one percent of South Dakota's budget at the time."  *Nat'l Fed. of Independ. Buss. v.*

23 *Sebelius*, 567 U.S. 519, 581 (2012) ("*NFIB*").  Such a minor amount led the Supreme Court to

24 conclude that the "encouragement to state action [was] a valid use of the spending power" and the

25 decision to accept the drinking age change "remain[ed] the prerogative of the States not merely in

26 theory but in fact."  *Dole*, 483 U.S. at 211-12.[8]

27 _____

28     [8] In contrast, in *NFIB*, the Supreme Court invalidated a congressional grant program that

19

Defs.' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment

In its 2019-20 state budget, California is budgeted to spend over $147 *billion* dollars.  *See*

2019 Budget Act General Fund Budget Summary, California State Budget, p. 10, available at:

http://www.ebudget.ca.gov/2019-20/pdf/Enacted/BudgetSummary/FullBudgetSummary.pdf (last

visited Jan. 21, 2020).  Yet, the amount of grant funds available to California and subject to the

Employment Verification Condition is $327.7 million.  Compl., ¶ 5.  That is less than 0.23% of

California's 2019-20 state budget, and less than the approximately 0.5% mentioned in *Dole*.

The amount of money at stake in this case is similar to the amount (as a percentage) at

stake in *Dole*, and does not come close the amount (again, as a percentage) in *NFIB*.  Because of

this, the Employment Verification Condition does not represent an unconstitutionally coercive

measure.

## V.      The Employment Verification Condition Does Not Violate the Administrative Procedure Act.

Counts Nine and Ten of the Complaint allege that the Employment Verification Condition

violates the Administrative Procedure Act.  Specifically, in Count Nine, Plaintiff alleges that the

condition violated the Constitution as an action without sufficient authority and in contradiction

of the Spending Clause.  *See* Compl., ¶ 245.  This claim should be rejected for the same reasons

set forth above demonstrating that the condition is within DOJ's authority and does not offend the

Spending Clause.

In Count Ten, Plaintiff claims that DOJ's decision to add the Employment Verification

Condition to the FY 2019 grant programs was arbitrary and capricious.  *See* Compl., ¶¶ 247-52.

Plaintiff is mistaken that the Employment Verification Condition first appeared in FY 2019.  *See*

*id.* at ¶ 251 (asserting that DOJ has "offered no explanation for adding the 1324a Requirement" to

FY 2019 grant programs).  As described above, the core of the Employment Verification

Condition has been a requirement of DOJ grants going back at least 17 years.  What is new (aside

threatened the elimination of an average of 20% of a state's budget if that state did not accept the
program.  "A State that opts out of the Affordable Care Act's expansion in health care coverage
thus stands to lose not merely a relatively small percentage of its existing Medicaid funding, but
*all* of it. Medicaid spending accounts for over 20 percent of the average State's total budget, with
federal funds covering 50 to 83 percent of those costs."  *NFIB*, 567 U.S. at 581 (internal quotation
marks and citation omitted).

20

Defs.' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment

1    from a modest training requirement) is that the text of that requirement is now stated in the grants

2    themselves, rather than just in the DOJ Financial Guide (where it is still found).  But the change

3    in location in no way lessens the obligation to comply with Section 1324a, which has been a

4    longstanding and non-controversial requirement of DOJ grants for nearly two decades.

5            Multiple reasons justify communicating the requirement on the face of each grant.  The

6    move makes the text easier and more convenient to find, for both administrators and grantees.  It

7    highlights an important legal obligation that grantees must plan to observe.  It eliminates the need

8    for a grantee to refer to the Financial Guide for the specifics of this condition.  It reduces the

9    likelihood that the condition will be overlooked or missed by a grantee.

10           These reasons justify the express placement of the grant condition into the grant award

11   documents themselves.  And, to the extent that Plaintiff challenges the decision made by DOJ

12   over 17 years ago to impose an Employment Verification Condition in the first place, that

13   decision, too, was reasonable.  As explained above, the Condition is a reasonable grant

14   management and administrative tool that aids and encourages grantees to comply with already-

15   existing legal obligations.

16           For these reasons, Plaintiff's claims under the APA should be dismissed.

17                                        **CONCLUSION**

18           Accordingly, this Court should dismiss Plaintiff's challenge to the Employment

19   Verification Condition set forth in Counts Six through Eleven of the Complaint, or in the

20   alternative, grant summary judgment on those same counts to Defendants.

21

22

23

24

25

26

27

28

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

/s/ Daniel D. Mauler
DANIEL D. MAULER
Virginia State Bar No. 73190
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20001
Tel: (202) 616-0773
Fax: (202) 616-8470
E-mail: dan.mauler@usdoj.gov
*Attorneys for Defendants*

Defs.' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment